## CITIZENS TRUST & SAVINGS BANK v HUTCHINSON

Ohio Appeals, 2nd Dist, Franklin Co

No 2447. Decided April 3, 1935

Hedges, Hoover & Tingley, Columbus, for plaintiff in error.

Addison & Addison, Columbus, for defendant in error.

## OPINION

By BARNES, J.

It is our judgment that this question is one of major importance and requires very careful consideration and analysis. That the action was one for rescission on the ground of misrepresentation and fraud was recognized by the trial court wherein His Honor stated to the jury that under the allegations of misrepresentation and fraud, the plaintiff would have two remedies, one in rescission and the other for damages, and that she had elected to bring the action in rescission. It is our conclusion that the petition sustains this characterization.

Through an action for rescission, the defendant bank could not be asked to take back the first mortgage leasehold bonds or the leasehold trust certificates, unless they sold them as owners. The bank, on being solicited for advice as to the kind and character of securities to be purchased by the plaintiff and then advising her to buy certain securities, and falsely misrepresenting the nature of the securities, upon which advice plaintiff acted, would still need the added allegation that the purchase was made from the bank, in order to permit an action against it for rescission. We have read and reread the petition in an effort to find this allegation of sale by the defendant bank. A mere casual reading will disclose that there is an absence of any direct allegation of sale by the bank. That it can or does arise inferentially from other facts alleged, is very doubtful.

However, we have arrived at the conclusion that since the defendant bank was persistently injecting this issue into the

case and seeking to meet any and all evidence that might, either directly or inferentially, show a sale by the bank, that this court in the interest of justice might permit an amendment, if it appears from the evidence that the bank owned and sold the bonds.

In our effort to correctly determine this question we have carefully and minutely examined the record and now briefly narrate the result of our investigation.

The plaintiff, Rose Hutchinson, was represented by her brother-in-law, William G. Taylor, in October, 1925, and all negotiations at that time for the purchase of securities were conducted by him. So far as the record discloses, the only individual he sought out and interviewed connected with the bank was Mr. Schlaechter, the assistant cashier. At the time of the trial Mr. Schlaechter was deceased and so his testimony was not available. He died in the fall of 1933, the trial taking place in March, 1934. The petition was filed January 5, 1933; the defendant's answer February 27, 1933, and plaintiff's reply March 14, 1933. The only oral testimony relative to the conversation was that of the brother-in-law, Mr. Taylor. The plaintiff presents no evidence that the defendant bank owned any of these bonds in October, 1925, at the time same were purchased by plaintiff. The direct, uncontradicted evidence is that the entire $350,000.00 issue of these bonds was purchased and owned by the First Citizens Corporation of Columbus, Ohio. There is also record evidence presented in the form of Exhibits B, C and D, that the First Citizens Corporation sold these bonds to Rose Hutchinson, or her brother-in-law, William C. Taylor. These exhibits are invoices of sale and were delivered to plaintiff or her brother-in-law at or about the date of sale. This is evidenced by the fact that the record discloses that she produced these papers from her files. Exhibit B, dated October 1, 1925, was an invoice of sale of Capitol Outlook bond in the sum of $1500.00; Exhibit C, invoice of sale of bonds in the amount of $2000.00; and Exhibit D, invoice of sale in the amuont of $3500.00. In each one of the exhibits the name of Schlaechter appears as salesman. Mr. Taylor, the brother-in-law, testifies that he transacted all his business with and paid over the consideration to Mr. Schlaechter in the bank proper. There is no evidence presented on the part of the defendant that any officer of The First Citizens Corporation ever saw the plaintiff or her brother-in-law, William G. Taylor.

From the uncontradicted evidence presented by plaintiff and her witnesses, giving it the most favorable interpretation in support of the judgment, the conclusion is irresistible that plaintiff has presented no evidence that the bank owned these bonds at the time of their purchase by the plaintiff. The fact that Mr. Taylor, the brother-in-law, had all his negotiations with Mr. Schlaechter, and further that the money was paid to Schlaechter and the bonds delivered by him later, wou'd not show ownership by the bank. There is no evidence that the consideration paid for these bonds ever went to the account of the defendant bank. There is evidence that it did not so go in the receipted invoices by the First Citizens Corporation's Exhibits B, C and D. The mere fact that a customer of a bank goes to some employe of his selection for advice, does not necessarily render the bank liable for misrepresentation and fraud. In order to create liability, it must be shown that it was either in the course of employment or that the bank was so interested in the subject matter as to preclude it from raising the question of ultra vires.

The record discloses that in the early part of 1925 the defendant bank had abandoned its Bond Department and no longer was interested in the purchase and sale of securities. The First Citizens Corporation was organized in the early part of 1925. Its stockholders and officials were, in the main, formerly connected with the defendant bank and the First National Bank, of Columbus, Ohio.

It must be recognized that the burden is upon the plaintiff to prove every necessary element as a predicate for her right to recover.

When Mr. William G. Taylor, in October, 1925, went to the defendant bank, according to the petition he was seeking advice as to investments. He sought out and interviewed Mr. Schlaechter. According to his testimony, Mr. Schlaechter advised him to buy Capitol Outlook bonds, and in connection with that advice misrepresented the security back of the bonds; told him that the mortgage was against the fee, whereas it was only against the ninety-nine year lease. Without any further showing, no liability would attach to the bank, even though the advice was acted upon and loss followed. An employe or an official of a bank may not involve his principal except when acting within the scope of his authority. In the absence of some evidence connecting the bank, the advice would be purely personal. It is not unusual for customers of a bank to consult some favorite official before making any business venture. Ad-

vice given under such circumstances is purely voluntary and personal, and can create no liability against the bank.

Does the fact that Mr. Taylor paid the cash and received the bonds at the bank proper alter the situation? We think not, and we base this conclusion on the following analysis:

1. The bank did not own the bonds, and hence could not make a direct sale.

2. The bonds were in fact purchased from The First Citizens Corporation. (See Exhibits B, C and D).

3. The bank was not engaged in the business of buying or handling securities.

4. The consideration for the bonds did not go to the account of the defendant bank, and therefore it further appears that the bank did not go out and buy the bonds and then sell to the plaintiff.

5. The action of Schlaechter was purely personal and intended as a favor to a customer of the bank.

6. There was no moving consideration to the bank through the sale of the securities.

In 1928 this issue of $350,000.00 bonds was called at 102, as per a condition in the bonds. Notice of redemption was published for four weeks in the Ohio State Journal. February 10, 1928, was fixed as the date for presentation of bonds and their redemption. The publications appeared under date of January 13, 20 and 27 and February 3. Neither the plaintiff nor her brother-in-law, according to their testimony, ever saw or heard of the bonds being called for redemption. An employe of the First Citizens Corporation testified that on or about January 17, 1928, communication was addressed to all bondholders of record, advising them of the call for redemption at 102, and also enclosing a proffer of exchange for 6% convertible leasehold Trust Certificates. (See Exhibits J and J-1).

According to the testimony of the plaintiff and her brother-in-law, neither ever received or saw this communication. However on January 30, 1928, Mrs. Hutchinson, according to her testimony, went to the bank and sought out Mr. Schlaechter, as she claims for the purpose of procuring an additional $500.00 bond and then incorporating all in one document, as per the understanding which she claims her brother-in-law had with Mr. Schlaechter. Again, we do not have the advantage of the testimony of Mr. Schlaechter, he being deceased. The documentary evidence presented by way of exhibits discloses that William G. Taylor and Rose Hutchinson jointly had a safety deposit box in the rooms of the defendant bank. (See defendant's Exhibit

K). Under the rules of the bank it was necessary to sign a card when either Rose Hutchinson or William G. Taylor desired to get into the safety deposit box. This card shows that on January 30, 1928, she had access to the safety deposit box and this is corroborative of her claim that on that day she procured the bonds from the safety deposit box and handed them to Mr. Schlaechter, as she claims for the purpose of having them incorporated in one bond. On the same day Mr. Schlaechter receipted to Rose Hutchinson for certain securities. This receipt of plaintiff's Exhibit 3 is quoted in full:

"Jan. 30, 1928.

"Received from Rose Hutchinson ...... Dollars 7M Capitol Outlook Bonds 100 — 3rd L. I. Bond 150 4th L. L. Bond & 227.50 in coupons 2-10-28 $7477.50 par Value. The Citizens Trust & Savings Bank, Columbus, Ohio.

Per Leo J. Schlaechter,
Asst. V.P."

This receipt itself does not disclose the purpose for which it is given to the bank. Defendant proffered in evidence defendant's Exhibit H, purporting to be the original record made under the supervision of an official of the First Citizens Corporation, then being on the stand as a witness. A photostatic copy was substituted for the original, without objection. Counsel for the plaintiff objected to the competency and the court sustained the objection on the ground that the entries were not made by the witness, but by a former employe. The employe had been away for three years and his present location was not known to the witness. There was not sufficient showing made why he could not have been made available as a witness.

It is our conclusion that the court was in error in excluding this testimony, by reason of the fact that it was an original record of the First Citizens Corporation and made under the supervision of the witness who identified it. In the eighth column there appears the following: The name Rose Hutchinson, and a detailed statement which corresponds to items included in receipt, plaintiff's Exhibit 3, quoted above in full. It is explained that the $7000.00 of bonds appearing in defendant's Exhibit M, as $7140.00, was an allowance of the $2.00 a hundred premium, as provided in the call for redemption. This page of the record is dated February 9, 1928. This made the total in excess of $7500.00 by $127.13, and the sheet shows

this amount as set out under transfer. On the same date (defendant's Exhibit L) it appears that the Citizens Trust and Savings Bank issued a cashier's check for the amount of $127.13 to Rose Hutchinson and her endorsement appears thereon. This Exhibit L was not admitted in evidence. It is our conclusion that this is error, for the reason that it would be corroborative of defendant's contention as to the disposition of the securities placed in the hands of Mr. Schlaechter, as evidenced by plaintiff's Exhibit 3.

On February 18, 1928, (defendant's Exhibit E) Rose Hutchinson, per W. G. Taylor, receipted for 15/700 Capitol Outlook 6% ctfs., No. 357, and on the same date, at 9:20 A. M., W. G. Taylor signed card for entrance into his safety deposit box.

It is the contention of defendant that Rose Hutchinson elected to exchange her $7000.00 Capitol Outlook Building Company bonds, together with other securities, making a total of $7500.00, for 15/700 Equitable Ownership in leasehold estate of the Capitol Outlook Building Company in the Spahr and Outlook Buildings, Columbus, Ohio. This Trust Certificate No. 357, attached to the record as defendant's Exhibit F, was dated February 10, 1928.

Under the original bond issue the defendant bank was named as trustee. This does not mean that the bank is in any sense interested in its securities. Their powers and obligations are controlled by the indenture of trust which was not introduced in evidence in this case. The burden being upon the plaintiff, there would be the obligation to introduce it in evidence if there was any claim that it had any conditions through which any liability would attach to the bank under the issues raised in the pleadings.

After the issuing of this trust certificate, plaintiff received quarterly check for $112.50, designated as proportionate rental on the basis of 6%, and these checks continued until February 10, 1932. The original bonds held by her were coupon bonds and were calculated on the basis of 6½% payable semi-annually.

Under the entire record in this case, in the light of the issues and the pleadings, we are constrained to the view that the trial court erred in not sustaining motion of defendant to direct a verdict at the close of plaintiff's testimony and renewed at the close of all the testimony. This conclusion being determinative of the case, we do not deem it necessary to consider claimed error in the charge of the court.

Coming now to enter the judgment which should have been entered by the court below, it is ordered that judgment be entered for defendant and plaintiff's action dismissed.

Exceptions will be allowed to plaintiff.

KUNKLE, PJ, and HORNBECK, J, concur.

## ON APPLICATION TO AMEND PETITION

Decided May 15, 1935

By THE COURT

The above entitled cause is now being determined on application of defendant in error to amend petition. A memoranda and citation of authorities accompany the application.

Amendments to pleadings to conform to the evidence are permitted in reviewing courts where under the state of the record the adverse party would not be prejudicially affected.

We made this observation in our original opinion.

However, it was our conclusion that there was a failure of proof upon this vital issue and it therefore follows that the amendment may not be permitted.

Had there been evidence on what we conceived to be a material and vital element of the case, the amendment would have been ordered in the first instance.

Where there is a failure of proof, we are powerless to order an amendment and it would not avail even if made.

BARNES, PJ, and HORNBECK, J, concur.

## ON APPLICATION FOR REHEARING

Decided May 15, 1935

By THE COURT

The above entitled cause is now being determined on application of defendant in error for rehearing.

This application is set out under five separate specifications. We will take these up in the order presented.

Memoranda and citation of authorities accompany the application.

GROUND 1. "IS THE OWNERSHIP OF THE BONDS IN QUESTION BY THE BANK A NECESSARY ELEMENT IN THE RIGHT OF THE PLAINTIFF TO RE-

COVER FOR FRAUD IN INDUCING THEIR PURCHASE."

The answer to this question would be no. But it is not pertinent to the issue. In the instant case the action is for rescission and under this character of action ownership is an essential element.

GROUND 2. "ARE THE BOOKS OF A THIRD PARTY NOT BOOKS OF ORIGINAL ENTRY UNIDENTIFIED BY THE PERSON MAKING THE ENTRY COMPETENT IN EVIDENCE AGAINST THE DEFENDANT IN ERROR OR IN FAVOR OF THE PLAINTIFF IN ERROR."

In support of this ground counsel cite §11495, GC; and also Jones on Evidence, §§1799, 1788 and 1787.

The section of the Code cited relates to circumstances under which adverse parties may not testify and the exceptions thereto. The evidence proffered and rejected was not of an adverse party and therefore we fail to see that the section has any application.

The sections cited from Jones on Evidence refer to the general rule as to the acceptance in evidence of original books of account and we think, if anything, sustains our position rather than advancing a contrary view.

We adhere to our original finding.

GROUND 3. "CAN THE COURT OF APPEALS OF THE STATE OF OHIO FIND FACTS AND RENDER A FINAL JUDGMENT IN A PROCEEDING IN ERROR WHERE THE TRIAL COURT IN ITS OPINION ON A MOTION FOR A NEW TRIAL FINDS THERE ARE DISPUTED QUESTIONS OF FACT WHICH SHOULD BE LEFT TO THE JURY."

In support of this ground counsel cite 12 decisions of the Ohio Supreme Court. We are unable to find that these cases are applicable.

The principle of law is well grounded that a reviewing court always has the right to determine whether or not there is any evidence upon a vital issue in the case. Our conclusions and reasons are fully set out in the original opinion.

GROUND 4. "CAN THE COURT OF APPEALS FIND THAT A FACT DOES NOT EXIST, WHICH IS ESTABLISHED BY POSITIVE AND UNCONTRADICTED TESTIMONY, WITHOUT IMPEACHMENT OF THE WITNESS, RENDERING THEIR TESTIMONY UNWORTHY OF CONSIDERATION."

Most assuredly a reviewing court could not and should not find that a fact does not exist where its existence is established by positive and uncontradicted testimoney. However, if counsel will carefully read the original opinion it will be disclosed that it was our opinion that one of the essential elements of plaintiff's case was not proven.

GROUND 5. "SHOULD THE COURT BE OF THE OPINION THAT FURTHER PRESENTATION OF THIS MATTER WOULD NOT BE OF ANY VALUE TO THE COURT, THEN WE WOULD LIKE A CLARIFICATION OF THE DECISION OF THE COURT OF APPEALS AS TO THE EXACT GROUND OF REVERSAL, AND IF SUCH REVERSAL BE BASED ON THE WEIGHT OF THE EVIDENCE, AS TO WHETHER OR NOT THERE WAS A CONCURRENCE OF ALL THREE JUDGES."

Counsel in his memoranda says that the copy of opinion furnished him did not disclose that there was a concurrence of the other members of the court. This was an inadvertence in transcribing. The original opinion on file in our office shows that the same was concurred in by all members of the court.

Counsel is incorrect in his conclusion that we based our finding for final judgment on the weight of the evidence. We did not so do.

It was our finding that the trial court erred in not directing verdict on defendant's motion by reason of a failure of proof on an essential element.

The application for rehearing will be denied.

BARNES, PJ, and HORNBECK, J, concur.